642 S.E.2d 863 (2007)
In the Interest of M.D., a child.
No. A06A1686.
Court of Appeals of Georgia.
March 1, 2007.
Rodney Q. Quarles, Chatsworth, TX, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, for appellee.
SMITH, Presiding Judge.
The mother and father of one-year-old M.D. appeal from a juvenile court order finding M.D. to be deprived. They contend that the evidence was insufficient to support the juvenile court's findings. We disagree and affirm.
In considering an appeal from the juvenile court's finding of deprivation, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. In the Interest of J.C., 264 Ga.App. 598, 591 S.E.2d 475 (2003). "In considering a deprivation petition, the petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue." (Citation, punctuation and footnote omitted.) In the Interest of D.L.W., 264 Ga.App. 168, 169-170(1), 590 S.E.2d 183 (2003). Under OCGA § 15-11-2(8)(A), a deprived child is a child who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."
Here, the evidence showed that in September 2005, the Department of Family and Children Services (DFACS) received information that the mother was standing in her front yard screaming and acting erratically while M.D. was in the home alone. When DFACS arrived, the mother told them that she had been attacked by spirits the night before and had been outside attempting to *864 fight them off. After the caseworker unsuccessfully attempted to find a relative to care for M.D., the child was placed in the temporary custody of DFACS.
In October 2005, DFACS presented the mother and father with a 30-day case plan for reunification. The case plan required, among other things, both parents to complete a psychological evaluation, and the mother to complete a psychiatric evaluation. The record reflects that the mother did not complete her psychological evaluation, but is silent as to whether that evaluation was subsequently completed or whether the mother completed the psychiatric evaluation as required. Nevertheless, in December 2005, a judicial citizens review panel found the parents had made reasonable efforts to comply with the case plan.
At the February 2006 deprivation hearing, the mother admitted that she had been diagnosed several years earlier with schizoaffective disorder and that she had abused prescription medications. She stated that only nine days before the deprivation hearing, she had been treated for the disorder and had been hospitalized for treatment on at least eight prior occasions. She also admitted that she had not been taking her medication when she was seen outside screaming, and that she thought, at that time, she could "beat" her condition without medication.
The father testified that he had been diagnosed as schizophrenic and suffers from depression, but that he takes medication that has been effective in controlling these illnesses. He testified further that he was aware that the mother was having delusions when she was seen screaming in the front yard and that he nevertheless went to work leaving the mother with M.D. the following day.[1] "An order temporarily transferring custody of a child based on alleged deprivation must be grounded upon a finding that the child is at the present time a deprived child, and a finding of parental unfitness is essential to support an adjudication of present deprivation." (Citations and punctuation omitted.) In the Interest of K.J., 268 Ga.App. 843, 844(1)(a), 602 S.E.2d 861 (2004).
Here, the most telling evidence of parental unfitness was presented by the mother herself. She acknowledged her psychological disorder and admitted that she often attempts to control her condition without medication. She also admitted that just nine days prior to the termination hearing she had delusions and was hospitalized for treatment and released only one day prior to the hearing. In this case, the mother's mental condition was of such duration and nature that it rendered her unable to provide adequately for the needs of the child. See In the Interest of D.L.W., supra, 264 Ga.App. at 170, 590 S.E.2d 183; see also OCGA § 15-11-2(8)(A). And the father, although his psychological disorder was controlled by medication, left the child in the care of the mother knowing that she was experiencing delusions. Under these circumstances, the evidence was clear and convincing that the child was without proper parental care and control and therefore deprived within the meaning of OCGA § 15-11-2(8)(A).
Judgment affirmed.
PHIPPS, J., concurs.
RUFFIN, J., concurs specially.
RUFFIN, Judge, concurring specially.
Although I concur in the majority opinion affirming the decision of the juvenile court, I write separately to clarify the facts and the analysis supporting the finding of deprivation.
It is well settled that a deprivation petition "focuses upon the needs of the child regardless of parental fault. The petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue."[2] Thus, I am troubled by the State's failure to present any evidence *865 regarding the effect of the mother's condition on the child in this case.[3] There was no testimony whatsoever that the mother's status and behavior had any impact, detrimental or otherwise, on the child's well-being. In fact, the DFACS caseworker testified unequivocally that he was satisfied with the condition of the child and the family home; the home "looked nice," and the child was dressed appropriately and showed no signs of abuse, neglect, or malnourishment.
Nevertheless, given the unique facts of this case, I agree that a finding of deprivation was warranted. The child involved is a mere infant, totally incapable of caring for herself. And the mother admitted that she has a substance abuse problem and schizophrenia, and stopped taking her medication, which rendered her delusional. She conceded that while she was actively delusional, she left her one-year-old daughter alone in the house to go outside and fight off spirits that she believed were going to take over her life and body. The father, who also suffers from schizophrenia and depression, left the child alone with the mother even though he was aware that the mother had experienced delusions the previous evening. Finally, there is no evidence that the mother completed her psychological and psychiatric evaluations as required by the case plan.
Thus, under these extreme circumstances, we need not wait until the child suffers harm before finding her to be deprived. I agree that the juvenile court was authorized to conclude that the child was deprived.[4]
NOTES
[1] In addition to M.D., the mother and father also had 13 other children between them, none of whom was in their custody.
[2] (Punctuation omitted.) In the Interest of D.C., 268 Ga.App. 882, 885(2), 602 S.E.2d 885 (2004).
[3] See In the Interest of C.L.Z., 283 Ga.App. 247, 641 S.E.2d 243 (2007) (finding of deprivation not authorized where the State offered no evidence that child suffered any emotional or physical harm from incident of abuse).
[4] See In the Interest of D.L.W., 264 Ga.App. 168, 170(1), 590 S.E.2d 183 (2003) (evidence of mother's severe mental disorder was clear and convincing evidence of deprivation).